# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

No. 24-5165

September Term, 2025

FILED ON: JULY 28, 2026

ACCURACY IN MEDIA, ET AL.,
>> APPELLEES

ROGER L. ARONOFF,
>> APPELLANT

v.

UNITED STATES DEPARTMENT OF DEFENSE, AND ITS COMPONENTS DEPARTMENT OF THE ARMY, NAVY DEPARTMENT, DEPARTMENT OF THE AIR FORCE, MARINE CORPS, EUROPEAN COMMAND, CENTRAL COMMAND, AFRICA COMMAND, SPECIAL OPERATIONS COMMAND, OFFICE OF SECRETARY OF DEFENSE AND JOINT STAFF, DEFENSE INTELLIGENCE AGENCY, ET AL.,
>> APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01589)

---

Before: WALKER and CHILDS, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. After according the issues full consideration, the Court is satisfied that appropriate disposition of the appeal does not warrant a published opinion. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d). For the reasons stated below, it is hereby

**ORDERED** and **ADJUDGED** that the district court's order on November 28, 2022, granting in part and denying in part the cross-motions for summary judgment and additionally denying Plaintiffs' motion for leave to propound an interrogatory, is **AFFIRMED**. It is **FURTHER ORDERED** that the district court's order on April 26, 2024, granting the Government's renewed motion for summary judgment, and denying Plaintiffs' cross-motion for

1

summary judgment, is **AFFIRMED**.

The Freedom of Information Act (FOIA) exists to strengthen public confidence in the actions of agencies at home and abroad. To that end, Plaintiffs made dozens of FOIA requests to several federal agencies seeking information related to the events and aftermath of the 2012 terrorist attack on the U.S. Embassy in Benghazi, Libya. Pursuant to Plaintiffs' FOIA requests, the agencies produced hundreds of responsive documents related to the attack. Plaintiffs sued in district court to challenge the adequacy of the agencies' productions and the agencies' justifications for withholding certain information from Plaintiffs. Plaintiffs also moved for discovery, asking for leave to propound an interrogatory to one agency in particular, the U.S. Department of Defense. The district court eventually resolved this dispute in favor of the agencies and denied Plaintiffs' discovery motion. The court relied on the agencies' unrebutted declarations about their search for responsive documents and the propriety of the FOIA exemptions the agencies invoked. Now, one Plaintiff appeals these decisions. We affirm.

**I**

**A.**

In 2014, Plaintiffs—Roger L. Aronoff, other individual plaintiffs,[1] and the non-profit corporation Accuracy in Media—sought materials from Executive law enforcement, defense, and intelligence agencies through FOIA. Plaintiffs submitted over three dozen FOIA requests for materials related to the terrorist attack on the U.S. Embassy in Benghazi, Libya on September 11, 2012, and the tactical response that followed. Plaintiffs' FOIA requests sought documents, historical maps, and communications they thought would support their beliefs about what occurred in the critical days and hours before and after the attack. Plaintiffs sent their requests to several agencies: the U.S. Department of Defense and several of its components[2] (DOD), the U.S. Department of Justice (DOJ), the Federal Bureau of Investigation (FBI), the U.S. Department of State (State Department), and the Central Intelligence Agency (CIA).

Plaintiffs filed suit in the U.S. District Court for the District of Columbia. Among other things, they sought review of the defendant agencies' alleged failure to produce responsive documents to Plaintiffs' requests and to properly justify the information they withheld from Plaintiffs. After several years, much of the dispute in the district court was resolved between the parties. However, a few issues remained, largely stemming from Plaintiffs' continued belief that the documents they received, and the information in the public record, contradicted what they believe occurred before, during, and in response to the Benghazi attack. In particular, the outstanding issues pertained to Plaintiffs' FOIA requests to the DOD, DOJ, State Department, FBI,

---

[1] The other individual Plaintiffs are: Larry W. Bailey Captain, USN (Ret.); Kenneth Benway Lieutenant Colonel, USA (Ret.); Richard F. Brauer Jr. Colonel, USAF (Ret.); Clare M. Lopez; James A. Lyons Jr. Admiral, USN (Ret.); and Kevin M. Shipp.

[2] The components of the U.S. Department of Defense that Plaintiffs sued were the U.S. Army, the U.S. Navy, the U.S. Air Force, the U.S. Marine Corps, the Office of Secretary of Defense, the Joint Chiefs of Staff, the Defense Intelligence Agency, and the European, Central, Africa, and Special Operations Commands.

and CIA (collectively, the Agencies).  The parties then filed cross-motions for summary judgment, and Plaintiffs also moved for leave to propound an interrogatory to the DOD.  Plaintiffs' interrogatory motion asserted that the DOD had "not been candid" about the events of Benghazi and that its account required additional corroboration through interrogatories.  Pls.' Cross-Mot. Summ. J. 33–36, ECF No. 71.[3]  The district court referred their pending motions to a magistrate judge for report and recommendation.

The magistrate judge recommended that the district court grant in part and deny in part the cross-motions for summary judgment and then further deny Plaintiffs' motion to propound an interrogatory to the DOD.  *Accuracy in Media, Inc. v. DOD*, No. 1:14-cv-1589, 2020 WL 9439354, at *14 (D.D.C. Aug. 27, 2020), *report and recommendation adopted sub nom.*, *Accuracy in Media v. DOD*, No. 1:14-cv-1589, 2022 WL 17250196 (D.D.C. Nov. 28, 2022) [hereinafter *AIM I*].  In the recommendation, the magistrate judge determined that the Agencies had conducted adequate searches and properly withheld documents pursuant to applicable and supportable FOIA exemptions.  *See id.* at *4.  However, the magistrate judge was unsatisfied by the FBI's *Glomar* response[4] and thus recommended denying summary judgment to the Government on that ground and instead granting it to Plaintiffs.  *See id.* at *10–12.  The magistrate judge further recommended that Plaintiffs' motion to propound an interrogatory be denied, finding the request unwarranted by the circumstances, and also "speculative" and "inappropriate."  *See id.* at *12–14.

The district court largely adopted the magistrate judge's report and recommendation, granting in part and denying in part summary judgment to both parties.  *See Accuracy in Media v. DOD*, No. 1:14-cv-1589, 2022 WL 17250196, at *1, *6–10 (D.D.C. Nov. 28, 2022) [hereinafter *AIM II*].  The FBI withdrew its *Glomar* response during the pendency of the district court's review of the magistrate judge's order, so the district court denied this portion of the Government's motion for summary judgment as moot.  *See id.* at *3, *10.  In the interim, the FBI searched for records that were responsive to Plaintiffs' requests.  *See id.* at *3.  As a result, one issue remained unaddressed in the district court, the newly disclosed FBI records and the exemptions used to redact them.  *See id.* at *10.  Later, the FBI acknowledged the existence of its requested records but withheld the documents in full based on several FOIA exemptions.  *See Accuracy in Media, Inc. v. DOD*, No. 1:14-cv-1589, 2024 WL 1833851, at *1 (D.D.C. Apr. 26, 2024) [hereinafter *AIM III*].  Thereafter, the parties again filed cross-motions for summary judgment regarding the FBI's productions and withholdings.  *Id.*  The district court then granted the Government summary judgment, finding the FBI's withholdings justified under a FOIA exemption.  *Id.* at *2.

**B.**

---

[3]  All Electronic Case Files (ECF) system citations that are marked with "ECF No." are references to items in the district court docket, *Accuracy in Media, Inc. v. Department of Defense*, No. 14-cv-01589 (D.D.C. Sep. 19, 2014).

[4]  An agency issues a "*Glomar* response" to a FOIA request by invoking a FOIA exemption and then "refus[ing] to confirm or deny the existence or nonexistence of responsive records."  *Elec. Priv. Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012) (citing *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)).  A *Glomar* response is proper "if the particular FOIA exemption at issue would itself preclude the acknowledgement of such documents."  *Id.* (citation omitted).

Now, Plaintiff Roger Aronoff alone appeals the district court's summary judgment orders and its order denying Plaintiffs' motion to propound an interrogatory. Before reaching the merits of this appeal, it is important to begin by understanding what lies at the heart of Aronoff's case. Aronoff continues to seek the withheld information because he believes the Agencies have been untruthful about the sequence of events during the Benghazi attack and response, and he further believes that Plaintiffs were wrongfully denied access to documents hidden from the public and Congress. So we frame the resolution of this appeal by first outlining the information he seeks.

The items related to Aronoff's contentions are the following: (1) an EXORD, a written order that Aronoff believes will show when and how the DOD directed the European Command to respond to the Benghazi attack; (2) an OPREP-3 PINNACLE report (OPREP-3) that Aronoff believes the DOD used to notify and provide information to its components about the attack and any tactical response; (3) the numbers and placements of U.S. military assets near Benghazi on September 11th and 12th of 2012, which Aronoff wants so that he may understand what "assets . . . could have been dispatched" in response to the attack; and (4) a "stand-down" order, or its equivalent, that Aronoff believes will show that security personnel were directed not to respond to the attack. As for this fourth item, Aronoff asserts that a "stand-down" order can be found in the CIA's Inspector General reports and the FBI's materials—videos, notes, and reports—related to agents' interviews of witnesses, victims, and personnel conducted after the attack. We address Aronoff's arguments related to these items in turn.

## II

We have jurisdiction over this appeal under 28 U.S.C. § 1291, and this court reviews cross-motions for summary judgment *de novo*. *Insider Inc. v. Gen. Servs. Admin.*, 92 F.4th 1131, 1134 (D.C. Cir. 2024). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] Fed. R. Civ. P. 56(a). Our *de novo* review includes relevant questions of law, such as "FOIA's statutory requirements and limitations." *Project for Priv. & Surveillance Accountability, Inc. v. U.S. Dep't of Just.*, 143 F.4th 506, 510 (D.C. Cir. 2025), *cert. denied sub nom.*, *PPSA, Inc. v. Dep't of Just.*, 224 L. Ed. 2d 11 (Feb. 23, 2026). We may rely on declarations to make this inquiry. *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 30 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999) ("To justify summary judgment, a declaration must provide detailed and specific information demonstrating that [the] material withheld is logically within the domain of the exemption claimed." (citation

---

[5] At the outset, we address Aronoff's contention that this court has the power to make findings of fact as part of our review. Appellant's Br. 18–20. It is not clear to what end he wishes us to make such findings. *Compare id., with* Reply Br. 4–7, 17. And Aronoff fails to provide a basis in our precedent to support that this court may consider such a request. *United States v. Askew*, 529 F.3d 1119, 1142 (D.C. Cir. 2008) (citing precedent that characterizes *de novo* factfinding as "wholly inconsistent with the function of an appellate court." (citation omitted)). Although, if necessary, we may consider arguments that a district court's factfinding was clear error, *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 96 (D.C. Cir. 2020), Aronoff developed this argument for the first time in his reply brief, Reply Br. 4–7, 17. Because this argument arrived late, it is forfeited. *Jones Lang LaSalle Ams., Inc. v. NLRB*, 128 F.4th 1288, 1296 (D.C. Cir. 2025) (collecting cases)). In any event, Aronoff declines to even provide a viable explanation for why this argument could not be advanced in his opening brief. *Cf. Holland v. Bibeau Const. Co.*, 774 F.3d 8, 14 (D.C. Cir. 2014).

4

modified)).

## A.

FOIA allows agencies to declare that portions of requested materials are exempt from disclosure, and Congress provided express exemptions under which agencies can justify those withholdings. 5 U.S.C. § 552(a)(8)(A), (b). We construe FOIA exemptions narrowly because the statute establishes "a strong presumption in favor of disclosure." *See Burka v. U.S. Dep't of Health & Hum. Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996). Below, the Government withheld documents pursuant to eight FOIA exemptions. 5 U.S.C. § 552(b)(1), (3), (6), (7)(A), 7(C)–(F). In *AIM I*, the magistrate judge recommended that the district court ratify the Agencies' withholdings under Exemptions 1, 3, and 7(D). 2020 WL 9439354, at \*4, \*10. In *AIM II*, the district court instead granted summary judgment based on Exemptions 1 and 3. 2022 WL 17250196, at \*7. Later, in *AIM III*, the district court permitted the FBI's withholdings under Exemption 7(A). 2024 WL 1833851, at \*2. Our own view is that Exemptions 1 and 7(A) are enough to resolve this dispute. *Larson v. Dep't of State*, 565 F.3d 857, 862–63 (D.C. Cir. 2009) ("[C]ourts may uphold agency action under one exemption without considering the applicability of the other.").

## 1.

The Agencies invoked Exemption 1 to authorize withholdings related to "documents containing information about U.S. personnel and assets relevant to the Benghazi attacks." Appellees' Br. 9; *see also id.* at 7–8, 23–24. What Aronoff searches for within those withholdings are the DOD's maps, assets, and EXORD, and information about the "stand-down" order, which Aronoff contends will be revealed in the CIA's Inspector General report or the FBI's interview materials. Appellant's Br. 18–19. Exemption 1 covers the withholding of classified materials that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and are "in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The Agencies have met the conditions required to justify their withholdings under Exemption 1.

The Agencies identify Executive Order 13526 to justify its withholdings under Exemption 1. Executive Order 13526 outlines a system for the proper classification of national security information. Exec. Order No. 13526, 75 Fed. Reg. 707, 707, 709–11 (Dec. 29, 2009). As our precedent requires, the Government provided this court with affidavits that explain the reasons for their withholdings in "reasonably specific detail," including reasoning for how the Agencies have met the criteria of Executive Order 13526, and thereby, the requirements of Exemption 1. *Larson*, 565 F.3d at 862 (citation omitted); *see, e.g.*, Williams Decl. ¶ 14, J.A. 340–41 ("[The requested record] is a finished intelligence product prepared by an analytic component of [the Defense Intelligence Agency]. The product is an in-depth analysis related to the Benghazi consulate attack which is based on information obtained from classified sources and methods. In addition, this intelligence product contains a detailed statement summarizing the sources upon which its analyses and assessments are based, and areas of intelligence gaps."). Furthermore, the Agencies' justifications for invoking Exemption 1 are "logical" and "plausible." *Larson*, 565 F.3d at 862

(citation omitted); *see, e.g.*, Blaine Decl. ¶ 16, J.A. 903 ("The redacted CIA information includes certain classified details . . . [which contain] specific details that would tend to reveal CIA's sources and methods, including operational techniques, resources, capabilities, and vulnerabilities."). The declarations plainly demonstrate why the withheld information falls within both Exemption 1 and Executive Order 13526's requirements. *Larson*, 565 F.3d at 862 (citation omitted). As such, we conclude that the Government has met its burden.

Aronoff fails to upset our conclusion with his counterarguments in favor of disclosure. Declarations may be relied upon to grant summary judgment, as long as "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Eddington v. DOD*, 35 F.4th 833, 837 (D.C. Cir. 2022) (citation omitted). Aronoff argues on appeal that there was bad faith by the Agencies in only the most speculative way, and only in support of his request to propound an interrogatory. This is not enough to disturb the presumption of good faith we assign to the Agencies' declarations. *Eddington*, 35 F.4th at 839 (holding that a plaintiff's "purely speculative claims about the existence and discoverability" of his requested FOIA materials did not overcome the presumption of good faith (quoting *SafeCard Svcs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991))). This court thus declines to "conduct a more detailed inquiry" into the Agencies' declarations because there are no contentions or record evidence to warrant it. *Larson*, 565 F.3d at 865 (citing *Gardels v. CIA*, 689 F.2d 1100, 1104 (D.C. Cir. 1982)).

**2.**

The FBI also invoked Exemption 7(A) to cover withholdings of its interview materials related to the Benghazi attack. Exemption 7(A) permits the withholding of "records or information compiled for law enforcement purposes" that, if produced, "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A); *see also Ctr. for Nat. Sec. Stud. v. Dep't of Just.*, 331 F.3d 918, 925–26 (2003) (noting that "a presently pending enforcement proceeding" is not required for a valid application of Exemption 7(A) (internal quotation marks omitted)). The Government has also met the conditions required to justify the FBI's withholdings under Exemption 7(A).

To determine whether Exemption 7(A) is properly invoked, this court first determines whether the requested "records or information" were compiled for "law enforcement purposes." *See* 5 U.S.C. § 552(b)(7). The Government's declarations confirm that the FBI's interview materials were compiled for the investigation of the Benghazi attack. *See, e.g.*, Seidel Decl. ¶ 13, J.A. 573 ("[The requested records contain] pending investigative files . . . [such as] one or more FD-302 Interview Reports with attachments, including handwritten notes, of interviews conducted . . . of United States personnel who had been in the Benghazi mission and the Benghazi CIA annex during the September 11-12, 2012, attacks on those facilities.").

Next, this court must determine the nature of the alleged enforcement proceedings, and whether the requested materials "could reasonably be expected to interfere with" them. *Id.* § 552(b)(7)(A). The Government again uses its unrebutted declarations to make this showing. *See, e.g.*, Seidel Decl. ¶ 17, J.A. 575 ("[D]isclosure could be detrimental to success of the pending

investigation and prospective enforcement proceedings by permitting subjects to estimate the scope of the FBI's investigation and judge whether their activities are likely to be detected."). Upon our review of these declarations, it is clear how and why the disclosure of these documents "could reasonably be expected to interfere with enforcement proceedings that are pending or reasonably anticipated." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (citation modified); *see id.* at 1098. So, we easily conclude that Exemption 7(A) allows the FBI to withhold its interview materials related to the Benghazi attack.

Aronoff does not contest that the FBI has made these showings and even conceded at oral argument that an investigation is ongoing. Rather, in his brief, Aronoff suggests that the FBI failed to show that there are pending or reasonably anticipated "prosecutions" to justify invoking Exemption 7(A). Appellant's Br. 19, 49–50. A pending prosecution is not required to justify a withholding under Exemption 7(A), nor is a presently pending "enforcement proceeding" even required. *See Ctr. for Nat. Sec. Stud.*, 331 F.3d at 926 (noting that Exemption 7(A) may be applied for law enforcement materials made during an investigation that is "likely" leading to enforcement proceedings).

In addition, we are also unconvinced by Aronoff's contention that public discussion or an individual interviewee's waiver should compel the disclosure of the FBI's requested records. It is true that "when information has been officially acknowledged and voluntarily disclosed in a public domain, 'a FOIA plaintiff may compel disclosure of that information even over an agency's otherwise valid exemption claim.'" *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 411 (D.C. Cir. 2020) (quoting *ACLU v. DOD*, 628 F.3d 612, 620 (D.C. Cir. 2011)). However, Aronoff's argument still fails because he has not made the required showing for this court to conclude that the Agencies waived confidentiality, namely that the information in the public domain is a *duplicate* of what is being withheld. *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 201, 201–02 (D.C. Cir. 1993).

Aronoff also cursorily argues that the FBI should not have redacted its materials in full because, in Aronoff's view, he only seeks access to portions of these materials that reveal the "stand-down" order. However, this court has held that agencies "may withhold records in their entirety when nonexempt portions are inextricably intertwined with exempt portions." *Farahi v. FBI*, 153 F.4th 1283, 1286 (D.C. Cir. 2025) (citation modified)). Moreover, we "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Id.* (citation omitted). The FBI has explained that it closely examined the requested information to determine if there was anything reasonably segregable that could be disclosed to Plaintiffs, but that nothing could be. We have no cause to discredit its reasoning. Consequently, we must conclude the FBI properly invoked Exemption 7(A) to cover the withholdings of its interview materials.

Relying on the unrebutted representations of the Agencies and the lack of any contraindicatory information in the record, we conclude that Exemptions 1 and 7(A) cover the Agencies' challenged withholdings. *Am. First Legal Found. v. U.S. Dep't of Agric.*, 126 F.4th 691, 694–95 (D.C. Cir. 2025) (citation omitted). Aronoff does not give us a reason to conclude

otherwise.[6]

**B.**

All that remains is the OPREP-3. Aronoff makes myriad, conflicting arguments pertaining to this document. In his brief, Aronoff initially challenged the adequacy of the DOD's search for the OPREP-3.[7] Aronoff argued that the document was not produced because the DOD "did not locate it, suggesting that the plaintiffs had sought the alert from the wrong [DOD] component." Appellant's Br. 13. Aronoff also argued that the DOD declined to forward it to the proper component. In response to both arguments, the Government pointed to its declarations, which assert that the DOD *did* produce the OPREP-3. Appellees' Br. 17 (first citing Herrington Decl. ¶ 8, J.A. 112; then citing Herrington Decl. ¶ 24, J.A. 117) (additional citations omitted). Then, in his reply, Aronoff simply argues this document is not the OPREP-3. At oral argument, Aronoff repeated these assertions, yet counsel conceded that he may not even be able to recognize an OPREP-3 if he were provided one.

To begin, Aronoff simply denying that the document the DOD produced is indeed the OPREP-3 he is looking for is not a proper challenge to the adequacy of the DOD's search. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (explaining that once an agency meets its burden of showing it complied with FOIA, the plaintiff's role is to "then provide countervailing *evidence*" about the adequacy of the agency's search (emphasis added) (citation modified)). Speculation that the truth is out there will not give rise to a viable FOIA challenge. *SafeCard*, 926 F.2d at 1201 ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."). However, we will take up and dispose of Aronoff's argument on the merits. We begin by noting that the DOD has already provided a "detailed and non-conclusory" declaration attesting to its production. *Id.* at 1200 (citation omitted). We also see no evidence in the record to cause us independently to doubt that the DOD properly processed Plaintiffs' request for the OPREP-3 and then provided it to Plaintiffs. So, we start with the conclusion that the OPREP-3 was indeed produced.

Once we are "satisfied that proper procedures have been followed and that the information logically falls into the exemption claimed," this court "need not go further to test the expertise of

---

[6] To the extent Aronoff challenges other exemptions asserted by the CIA, he does so to no avail. Aronoff fails to lodge reviewable objections to the CIA's exemptions because he neither clearly states which exemptions he is challenging nor provides bases for said challenges. *See* Appellant's Br. 44 (conceding that "many of the CIA's redactions are undoubtedly proper"). And the court cannot carry the ball for him. *Doe v. Blanche*, 172 F.4th 901, 912 (D.C. Cir. 2026) ("As the 'neutral arbiter of matters the parties present,' we 'rely on the parties to frame the issues for decision.'" (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008))).

[7] Interestingly, in his brief, Aronoff relies upon the declaration the DOD produced to explain what the OPREP-3 is, Appellant's Br. 13 (citing Herrington Decl. ¶ 24, J.A. 117), but in the same breath denies that the agency produced the report, even going so far as to cite the same paragraph where the DOD declarant states that the agency produced the document, *compare id.* (citing Herrington Decl. ¶ 24, J.A. 117), *with* Appellees' Br. 17 (citing Herrington Decl. ¶ 24, J.A. 117).

the agency, or to question its veracity when nothing appears to raise the issue of good faith." *Larson*, 565 F.3d at 867 (quoting *Gardels*, 689 F.2d at 1104). Accordingly, for Aronoff to prevail in spite of our initial conclusion, he owes us a showing of the Agencies' bad faith. *SafeCard*, 926 F.2d at 1201 ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." (citation modified)). Instead, Aronoff merely assures us in response that this document is not the OPREP-3 he requested. While this showing from Aronoff will not overcome the presumption of good faith, it is the only one he offers. As a result, because we have concluded that the DOD's declaration was satisfactory and that there is no record evidence to contradict its representations, *see SafeCard*, 926 F.2d at 1201, Aronoff's failure to raise substantial doubt about the reasonableness of the DOD's search and production of the OPREP-3 ends our inquiry. *Kowal v. U.S. Dep't of Just.*, 107 F.4th 1018, 1028 (D.C. Cir. 2024), *cert. denied sub nom. Kowal v. Dep't of Just.*, 145 S. Ct. 2821 (2025).

## III

Finally, Aronoff challenges the district court's refusal to allow Plaintiffs to propound an interrogatory to the DOD. This court reviews the limits a district court places on discovery for abuse of discretion. *Eddington*, 35 F.4th at 836 (D.C. Cir. 2022). In general, because of the nature of FOIA, namely the productions of documents it makes available, discovery in a FOIA case is rare. *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 318 (D.C. Cir. 2006). Discovery in a FOIA case is permissible when the district court concludes—upon reviewing declarations or before such review—that the agency has acted in bad faith in conducting their search responsive to the FOIA requests. *In re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020) (citations omitted). Aronoff again has shown us no more than his "mere suspicion of bad faith," which we have clearly held "cannot be used as a dragnet to authorize voluminous discovery that is irrelevant to the remaining issues in a case." *See id.* at 114. Aronoff's beliefs about the DOD's public representations are not the "evidence" we require to justify compelling the agency to provide discovery in addition to its FOIA productions. *See id.* at 113. We see no abuse of discretion in the district court's conclusion that the DOD's search was "reasonably calculated to uncover all relevant documents," and thus could not be compelled to respond to an interrogatory. *Id.* at 116 (citations omitted). Hence, Plaintiffs' motion to propound one was properly denied.

\* \* \*

For the foregoing reasons, this Court affirms the orders of the district court granting summary judgment to the Government and denying Plaintiffs' motion to propound an interrogatory to the DOD.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. Rule 41(a)(1).

### **Per Curiam**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk